1        UNITED STATES BANKRUPTCY COURT
           SOUTHERN DISTRICT OF FLORIDA
2

3                          Case No.:  19-14602-AJC

4   In re:

5   SELECTIVE ADVISOR GROUP, LLC,

6        Debtor.
    _____/

7

8

9

10

11               ECF # 12, 8, 20, 24

12

13                  May 8, 2019

14

15

16        The above-entitled cause came on for

17   hearing before the HONORABLE A. JAY CRISTOL, one of

18   the Judges of the UNITED STATES BANKRUPTCY COURT, in

19   and for the SOUTHERN DISTRICT OF FLORIDA, at 301 N.

20   Miami Avenue, Miami, Miami-Dade County, Florida, on

21   Wednesday, May 8, 2019, commencing at or about

22   11:40 a.m. and the following proceedings were had:

23

24        Transcribed from a digital recording by:
              Helayne Wills, Court Reporter

25

1   APPEARANCES:

2

        ADR MIAMI, LLC, by
3       JUAN RAMIREZ, JR., ESQ.,
        on behalf of NLG, LLC, and Juan Ramirez

4

5       DAVID W. LANGLEY, ESQ.,
        on behalf of Liza Hazan

6

7       OFFICE OF THE UNITED STATES TRUSTEE, by
        JOHANNA P. ARMENGOL, ESQ.,
8       on behalf of the U.S. Trustee

9

        CHRIS KOSACHUK
10      pro se

11

        ALSO PRESENT:
12      ECRO - Electronic Court Reporting Operator

13

14

15

16

17

18

19

20

21

22

23

24

25

1             MR. RAMIREZ:  Judge, I understand we're on

2    Docket 12?

3             THE COURT:  We're now on Selective

4    Advisor.

5             MR. RAMIREZ:  Our verified motion to

6    dismiss the case with prejudice?

7             THE COURT:  Yes.

8             MR. RAMIREZ:  Judge, we --

9             THE COURT:  I don't think there's any

10   dispute, from looking at the file.  This company has

11   no income, no employees, no priority creditors, and

12   only creditors of several law firms.

13            What's the purpose of it here?  Who's

14   representing Selective Advisor?

15            MR. LANGLEY:  I am, Your Honor.

16            THE COURT:  Well, tell me, why shouldn't

17   the case be dismissed?

18            MR. LANGLEY:  Judge, several reasons.  The

19   main thing is, the bankruptcy was filed to try to

20   preserve assets, which is a legitimate purpose for a

21   Chapter 11.  In fact, I found a case out of Georgia

22   that I think is very instructive, that has some

23   similar facts.  If I could present the court with a

24   copy.  In re:  Golding, 99 B.R. --

25            MR. RAMIREZ:  Judge, he filed a response

1   and he never filed -- we're not ready to respond to

2   his cases that he's going to be giving you today.

3   This has been pending for almost a month.

4           THE COURT:  Well, I want to hear.

5           What is the purpose of the case,

6   Mr. Langley?  Do you dispute any of those statements

7   that I made, no income, no employees, no priority

8   creditors, and the only debts are some attorney's

9   fees?  What's to be reorganized?

10          MR. LANGLEY:  There's also a potential

11  claim that we don't recognize by NLG, and there is

12  various actions by NLG trying to upset the judgment

13  that is held by Selective.

14          As we point out in the adversary

15  proceeding, you are the only Judge, the only Court

16  that has had all the parties before it in order to

17  make a determination and to resolve ten years of --

18  now 12 years of litigation.  Despite your rulings in

19  the adversary, where Selective was a party, where

20  you required that we all stipulate to finality, and

21  we all did, and when Mr. Ramirez attempted to argue

22  that he wanted to challenge a ten-year old --

23  actually a seven-year old judgment, you questioned

24  whether that could be done after ten years.

25          Despite that, they're trying to do that in

1    various courts, and we wanted to bring everything

2    back to Your Honor to rule, because you're the one

3    that knows this case the best, that has heard all

4    the different actions combined, and you reconciled

5    all the prior rulings.

6              They're now trying to go back against your

7    final judgment, against a warning that you -- a

8    statement that you put in the December 28th contempt

9    order, suggesting that it would be inappropriate for

10   NLG to continue to try to go behind your judgment

11   and attack various court orders that are seven to

12   ten years old.  We wanted to bring all that back

13   before Your Honor so we could have rulings on it

14   here, and not in courts all over the place.

15             THE COURT:  So that gets you to a Chapter

16   11?  You want me to reorganize history instead of a

17   company?

18             MR. LANGLEY:  No.  The company owns the

19   judgment that has the right to foreclose on the

20   home.  Essentially, Selective is the party that

21   really has the rights to this home, and to the

22   proceeds of sale once it is sold.  As you know,

23   Judge, Selective is owned by Ms. Hazan's husband.

24   So it's a husband and wife essentially.

25             I think if we had filed a joint Chapter

1    11 -- it wasn't necessary, because Mr. Meehan was

2    not involved in any of the prior litigation -- if we

3    had a joint Chapter 11 going, and the company owned

4    by the couple, you may not be as concerned about

5    whether it's an appropriate Chapter 11.

6              This is just a little bit different,

7    because we have the wife in a Chapter 11 and the

8    husband's company in a Chapter 11, but it's to

9    preserve the judgment, which is the rights to the

10   home.  We're trying to preserve this property

11   against continuing attempts by NLG to take that away

12   from them.  That, plus just the cost of attorney's

13   fees, having to fly all over the country and deal

14   with these.  There are limited funds available to

15   litigate on behalf of Selective, and we are trying

16   to preserve assets and bring this all into one

17   Court, which I believe is an appropriate basis for a

18   Chapter 11.

19              MR. RAMIREZ:  Judge --

20              THE COURT:  You wish to be heard?

21              MR. RAMIREZ:  Yes, Judge.

22              That rambling response did not, I think,

23   answer your question.  This Court is not a mechanism

24   for consolidating cases that are supposed to be in

25   New York and other jurisdictions.  If they're

1  correct that the Judge in New York has ruled on

2  this, they should not be afraid to have the Judge

3  actually issue a judgment.

4          They have, in fact, previously tried to

5  get Your Honor to find us in contempt for having

6  that motion pending in New York, and the Court said

7  you're not going to get involved with the litigation

8  in New York.

9          In New York Selective is a plaintiff.

10  They're not the defendant.  They're a plaintiff.  So

11  our motion in New York is not against the debtor.

12  Our motion is a defensive motion as a defendant

13  against the successor to Quebec, which was the

14  judgment -- the one that obtained the judgment.

15          They say in their filing Number 45 that

16  the reasons for filing this Chapter 11 was, number

17  one, to preserve financial resources.  There are no

18  financial resources to preserve.  What they do want

19  to do is, number two, consolidate litigation pending

20  in multiple courts into this bankruptcy proceeding.

21          Well, it would be, I think, an improper

22  bankruptcy purpose, and to negotiate and resolve

23  credits or disputes.  Well, that's also not a proper

24  bankruptcy -- if there are no assets, and the only

25  assets they list is against NLG, that's not a

1    bankruptcy purpose.

2              This whole thing was done just to derail

3    the hearing that we have in front of Judge Shlomo

4    Hagler in the Supreme Court of New York in New York

5    County.

6              THE COURT:  Thank you.

7              Does the United States Trustee have

8    something to add?

9              MS. ARMENGOL:  Yes, Your Honor.  Thank

10   you.  Johanna Armengol for the U.S. Trustee,

11   A-R-M-E-N-G-O-L.

12             Your Honor, our office is very protective

13   of this Court's resources and time.  This is not the

14   first time we've had cases from other jurisdictions.

15   I will refresh this Court's memory on the Pete

16   (phonetic case from New York.  We got the Pete case

17   filed here when there had been a dismissal in New

18   York by Judge Chapman, and if you recall, Your

19   Honor, Your Honor transferred the matter to Judge

20   Chapman, and Judge Chapman said, "You should have

21   all come over here.  Why did you all file in

22   Florida?"

23             Your Honor, we agree with Your Honor's

24   assessment -- initial assessment of this case.  This

25   is a two-party dispute.  There's no income, no

1   rehabilitation prospect of any kind.  So in that

2   regard, Your Honor, we believe this is a two-party

3   dispute.  It does not belong in this Court.

4          However, Judge, let me focus on one thing,

5   which is the order from New York dismissing this

6   case with prejudice from Judge Grossman.  I'm

7   looking at the order from Judge Grossman, Judge.

8   The debtor's bankruptcy case in New York in 2015 was

9   dismissed with prejudice and nothing else.  There's

10  nothing else in the order that tells us whether this

11  is a period prejudice or not.

12         Judge, if I may, I have a brand new 2019

13  case out of Illinois that I would want to present to

14  you.  I have copies for counsel.  If I may, Judge.

15         THE COURT:  Susan will help you.

16         MS. ARMENGOL:  Your Honor, the reason I'm

17  giving the Court and the parties a copy of this case

18  is, A, it's fresh off the press, and B, because it

19  talks in detail and discusses the law, Judge, on

20  dismissal with prejudice.  Okay?

21         So if the Court reads this case, and reads

22  the reasoning and the law, the Court may conclude

23  that this case does not belong in bankruptcy,

24  because it's precluded from filing again, that the

25  dismissal contemplated by Judge Grossman may very

Page 10

1   well be a permanent dismissal and -- I'm sorry -- a

2   permanent bar to refiling, and the case does not

3   belong here.

4           If that's the case, Your Honor, the Court

5   does not need to find that there was bad faith.

6   There's no need for finding anything, except that

7   this case is precluded to be filed, because of a

8   permanent bar in New York.

9           For all those reasons, Your Honor, I don't

10  believe this case belongs in bankruptcy.

11          MR. LANGLEY:  Judge, if I may respond to

12  that issue.

13          MR. KOSACHUK:  Your Honor, if I may.

14          MR. LANGLEY:  Judge, we object to

15  Mr. Kosachuk --

16          THE COURT:  We'll take a ten-minute recess

17  and then we'll continue.

18          (Thereupon, a recess was taken, after

19  which the following proceedings were had:)

20          THE COURT:  We were starting on something,

21  I believe.

22          MR. LANGLEY:  Yes, Judge.  If I could

23  respond to Ms. Armengol's argument.

24          As we pointed out in Docket Entry 44,

25  where we were responding to -- actually responding

1   to Docket Entry 12, 20 and 30, three repetitive

2   motions to dismiss filed by NLG, we reference the

3   Frieouf case out of the 10th Circuit, which

4   discusses the interplay between Section 349(a) and

5   109(g).  At least part of the ruling out of that

6   case is that 349 gives -- Section 349(a) gives the

7   Bankruptcy Court discretion to determine whether

8   there is cause to dismiss a case with prejudice.

9           And as we point out in the attached

10  transcript from the Bankruptcy Court in New York,

11  NLG specifically asked for a finding of bad faith

12  and the Court refused to do that.  In fact, the

13  Court made no findings of any kind.

14          So it would have been -- we're attempting

15  to look at the intent behind the Court's ruling, and

16  as Ms. Armengol's case points out referencing the

17  Hall case, some cases talk about with prejudice as

18  barring a future filing, and other cases talk about

19  it as barring the future ability to discharge the

20  debts that were raised in that particular case.  And

21  it's used by -- both terms use it to mean -- in some

22  cases only reference -- with prejudice only

23  references the right to discharge the debts that

24  were filed in that case.

25          So that, read together with an absence of

1   any finding of bad faith by the Bankruptcy Court in

2   New York, I think precludes that order from being a

3   bar to any future filings.  There's no time period

4   put on there.

5          We also point out in our motion that

6   there's never been a ruling that goes beyond two

7   years, that barred anybody -- that we could find

8   barred anybody from filing after two years.  So we

9   don't think that the New York order was intended to

10  bar a future filing for Selective.  Certainly, there

11  wasn't any finding to back that up.  There's no

12  finding of bad faith in that case.

13         MR. RAMIREZ:  Judge, if I may, very

14  briefly, the bankruptcy filing was filed two hours

15  before the hearing in front of the same New York

16  Judge Shlomo Hagler, for the same reason, with the

17  same, excuses.  They had a judgment.  That was the

18  only asset, and they had two attorneys or -- I think

19  only one attorney that was owed a fee.

20         This is an eerily similar filing for the

21  same purpose, to derail a hearing in front of Judge

22  Shlomo Hagler in New York.  I think, because it was

23  done for the same intent, with the same bad faith,

24  that you should interpret the prior to be with

25  prejudice, and not to redo the same thing with the

```
1    same assets and the same liabilities.
2             MR. LANGLEY:  Judge, we would object to
3    Mr. Kosachuk arguing.
4             MR. KOSACHUK:  Your Honor, Chris Kosachuk.
5    I would --
6             THE COURT:  What is your objection?
7             MR. LANGLEY:  That he doesn't have
8    standing to object in this case.  He's not an
9    attorney.  The motion is filed by NLG.
10            MR. KOSACHUK:  It's a joint motion, Your
11   Honor.  I have filed pleadings in this bankruptcy.
12            But I also would like to tell the Court, I
13   was present at the hearing before Judge Grossman in
14   New York, and I have a copy of the transcript of
15   exactly what occurred at their previous bankruptcy.
16   Because Your Honor touched on the most important
17   part.  Selective is ineligible to file the petition
18   that is pending before this Court, because of the
19   previous dismissal with prejudice in New York.
20            THE COURT:  I doubt that.  Now, if someone
21   has a case dismissed five years ago, and then they
22   have additional business thereafter, that should not
23   prevent them from bringing those matters back before
24   a Bankruptcy Court.  On the end of today's calendar
25   we have Arrow Air, its third Chapter 11.  It's a 33.
```

1   So that argument doesn't fly.

2            Now, there's an interesting legal

3   question.  What is the meaning of a dismissal with

4   prejudice?  But we don't have to reach that in this

5   case.  In this case we're talking about no income,

6   no employees, no priority creditors, and only

7   limited claims.

8            The U.S. Trustee thinks the case should be

9   dismissed, has strong argument in support of that

10  position, and if you have anything else to add,

11  please add it and then we'll move on.

12           MR. KOSACHUK:  No.  I agree with the U.S.

13  Trustee.  The case should be dismissed with

14  prejudice.

15           MS. ARMENGOL:  Thank you, Your Honor.  One

16  more thing for the record.

17           I would want to read the cite of the case

18  that we just handed you, the Illinois case.  For the

19  record that is In re:  Class A Properties 5, LLC,

20  and it's at 2019 Westlaw 1601729, Your Honor.

21           Again, we believe the case should be

22  dismissed.  And in light of the fact that the Court

23  only has the order from Judge Grossman not

24  specifying the prejudice period, I believe that the

25  Court can take that order on its face, because

1  Selective has not gone before Judge Grossman to seek

2  clarification.

3         THE COURT:  Well, again, I think that's

4  immaterial.  The simple fact of the matter is, if

5  things occurred since the dismissal of that case

6  with prejudice, that were not in being at that time,

7  that does not prevent the filing of another Chapter

8  11, but that's immaterial in this case.

9         What's the purpose of an 11?  What are you

10  going to reorganize?

11         MR. LANGLEY:  Judge, Selective owns the

12  rights to foreclose on the home.  It has the rights

13  to the home.  It's trying to preserve that asset,

14  Essentially, the same as the case that I was

15  referencing, In re:  Golding.

16         THE COURT:  I'm not persuaded.  In any

17  event, the Court will enter an order on that matter,

18  and we'll now move on to Court Paper 8, which is

19  another one of those asserting that Mr. Kosachuk is

20  ghostwriting pleadings.

21         That's not my job.  If attorney Astrid

22  files a pleading, she is responsible for that

23  pleading.  If it was ghostwritten by Mr. Kosachuk or

24  Mickey Mouse, it makes no difference.  She's

25  responsible for it.  And if there's any violation of

1    rules, that's something to take up with the Florida

2    Bar, or whoever governs the conduct of attorneys.

3    So the Court will enter an order on that matter.

4              Now we'll move on to something that I find

5    quite annoying, an attempt to subpoena our clerk,

6    Joe Falzone.  No.  Anybody want to talk about that?

7              MR. LANGLEY:  Yes, Judge.  We spoke with

8    Mr. Falzone and asked him for his permission before

9    doing that, and he said yes.

10             THE COURT:  He may have said yes.  I said

11   no.  Keep your hands off our clerk.  This is not a

12   matter where you're going to start going into court

13   records and --

14             MR. LANGLEY:  If I may, Judge, I

15   understand that you don't want to get involved in

16   the motion for order to show cause, but since the

17   clerk's office is the one that issues the

18   credentials to file, I thought they may want to know

19   that one of the attorneys whom they authorize to

20   file in Bankruptcy Court is misusing her

21   credentials.

22             THE COURT:  Thank you.  The Court will

23   draw an order on this matter, but the Court is not

24   going to permit subpoenaing the clerk for the

25   clerk's records.

1           So what else do we have on the calendar

2   today?  Oh, there was a withdrawal and an objection

3   to withdrawal.  If someone withdraws a pleading, I

4   don't understand how there could be any standing

5   to --

6           MR. RAMIREZ:  That's moot, Judge.

7           MR. LANGLEY:  Yes, Judge.

8           THE COURT:  So that seems to take care of

9   that.  That seems to bring us to the end of the

10  calendar today.

11          Is there anything we missed?  I'll ask you

12  first, Mr. Ramirez, and then I'll ask Mr. Langley.

13          MR. RAMIREZ:  Yes.  We have, Judge.  Under

14  20, we had a motion for referral by the Court for

15  suspected bankruptcy --

16          THE COURT:  That's not the Court's job.

17  The Court will not refer matters.  There's a

18  procedure.  If someone thinks a crime has been

19  committed, they go to the U.S. Attorney or the

20  State's Attorney and make their statement.  If they

21  can convince one of those prosecutors that something

22  has been done illegally, that will be taken care of

23  that way.  It's not my job to refer matters to

24  criminal prosecution.

25          MR. RAMIREZ:  In that case, we'll withdraw

1    the motion, Judge.

2              THE COURT:  All right.  I think that

3    covers the calendar.

4              Mr. Langley, is there something you saw

5    that we missed?

6              MR. LANGLEY:  No, Your Honor.  I think

7    that covers everything.

8              THE COURT:  All right then.

9              And in the future, we're going to set one

10   motion at a time.  We're not going to have a whole

11   plethora of motions all set at the same time.  It's

12   not productive of the Court's time.

13             MR. RAMIREZ:  Judge, would you like for us

14   to send you an order dismissing the bankruptcy

15   through the e-mail service?

16             THE COURT:  An order dismissing what?

17             MR. RAMIREZ:  The Selective Advisor

18   bankruptcy.

19             THE COURT:  The Court will make a decision

20   on that.  As I said, I found the arguments for

21   dismissal supported by the U.S. Trustee to be quite

22   persuasive, but I will enter whatever order is

23   appropriate after I re-examine this case, which I

24   never saw before today, Class A Properties, and also

25   the record in this matter.

1          MR. RAMIREZ:  Thank you.  We also had an

2    emergency motion, Number 24, to determine that the

3    stays as filed apply, automatic stay, because it's

4    an action against -- it's not an action against the

5    debtor.  The New York action is a defensive motion.

6          THE COURT:  What Court Paper is that?

7          MR. RAMIREZ:  Number 24, Judge.

8          They have never disputed in any of the

9    filings that the automatic stay actually does apply,

10   and we submit that it does not apply.

11         THE COURT:  Well, we're not in the

12   business of issuing comfort orders.  I at this

13   moment, if, as you say, if the stay is staying

14   action against a debtor, then the stay applies.  If

15   it's not against an action of the debtor, the stay

16   does not apply.  Those are facts, and I'm not going

17   to rule on them at this time.

18         We'll adjourn this hearing.  I thank you

19   all.

20         MR. KOSACHUK:  Your Honor, may I be heard

21   on that one point?

22         It's not a comfort order.  What's happened

23   in New York is the following:  The debtor,

24   Selective, has gone before Judge Hagler, state court

25   judge in New York, and said that the automatic stay

1    applies.

2              Judge Hagler said, "Well, I need an order

3    from the Bankruptcy Court stating whether or not the

4    automatic stay applies to my case."

5              So that's what we were trying to get

6    clarification on, that the automatic stay --

7              MR. LANGLEY:  That's not true.

8              MR. KOSACHUK:  It's absolutely true.  I'm

9    the only one in this courtroom who's been present at

10   all the hearings before Judge Hagler.  I'm a hundred

11   percent certain of what he said and what he told me

12   to do.  He told me to come down to this Bankruptcy

13   Court before Your Honor and get an order saying

14   whether or not he can proceed.

15             THE COURT:  What Court Paper are you

16   referring to now?

17             MR. KOSACHUK:  24.

18             MR. LANGLEY:  Judge Hagler denied all

19   pending motions.  There's no pending motion in the

20   New York case.  Mr. Kosachuk is attempting to

21   represent NLG without a license, and he's

22   misrepresenting to you --

23             MR. KOSACHUK:  Your Honor, I'm

24   representing myself in New York, as well.

25             THE COURT:  One moment, please.  We're

Page 21

1    looking for Court Paper 24.  That's the paper you're

2    talking about.

3                ECRO:  Page 8.

4                THE COURT:  You're saying Page 8.

5                (Discussion off the record.)

6                THE COURT:  Okay.  Basically, we're going

7    to rule on whether or not this case should be

8    dismissed.  If it's dismissed then there is no stay.

9    And if it isn't dismissed we can, if it's necessary,

10   talk about it further.  I think there's a pretty

11   good chance that we're going to dismiss this case

12   based on the facts before us.

13               MR. KOSACHUK:  Thank you, Your Honor.

14               MR. RAMIREZ:  Thank you, Judge.

15               THE COURT:  Thank you all.

16               (Thereupon, the hearing was concluded.)

17

18

19

20

21

22

23

24

25

Page 22

1                        CERTIFICATION

2

3    STATE OF FLORIDA:

4    COUNTY  OF  DADE:

5

6              I, HELAYNE F. WILLS, Shorthand

7    Reporter and Notary Public in and for the State of

8    Florida at Large, do hereby certify that the

9    foregoing proceedings were taken by electronic

10   recording at the date and place as stated in the

11   caption hereto on Page 1; that the foregoing

12   computer-aided transcription is a true record of my

13   stenographic notes taken from said electronic

14   recording.

15              WITNESS my hand this 31st day of May,

16   2019.

17

18

19   _____

                        HELAYNE F. WILLS
20             Court Reporter and Notary Public
            In and For the State of Florida at Large
21          Commission No:  GG123092  Expires 8/2/2021

22

23

24

25