Page 1

1      UNITED STATES BANKRUPTCY COURT
              SOUTHERN DISTRICT OF FLORIDA
2

3                          Case No.:  19-14602-AJC

4   In re:

5   SELECTIVE ADVISOR GROUP, LLC,

6        Debtor.
    _____/

7

8

9

10

11                      ECF # 63

12                   June 25, 2019

13

14

15        The above-entitled cause came on for

16   hearing before the HONORABLE A. JAY CRISTOL, one of

17   the Judges of the UNITED STATES BANKRUPTCY COURT, in

18   and for the SOUTHERN DISTRICT OF FLORIDA, at 301 N.

19   Miami Avenue, Miami, Miami-Dade County, Florida, on

20   Tuesday, June 25, 2019, commencing at or about

21   2:02 p.m. and the following proceedings were had:

22

23

24        Transcribed from a digital recording by:
                 Helayne Wills, Court Reporter

25

1   APPEARANCES:

2

       ADR MIAMI, LLC, by
3      JUAN RAMIREZ, JR., ESQ.,
       on behalf of NLG, LLC, and Juan Ramirez

4

5      DAVID W. LANGLEY, ESQ.,
       on behalf of Liza Hazan

6

7      ALSO PRESENT:
       ECRO - Electronic Court Reporting Operator

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1          THE COURT:  That brings us to Selective

2    Advisor Group.  Appearances, please.

3          MR. RAMIREZ:  Juan Ramirez on behalf of

4    NLG, LLC.

5          MR. LANGLEY:  Good afternoon, Your Honor.

6    David Langley appearing on behalf of Selective

7    Advisor Group.

8          THE COURT:  Very well.  This is a motion

9    for sanctions.  Your motion, Mr. Ramirez.

10          MR. RAMIREZ:  Judge, nice to be back.

11    We've been gone for a while.  I'm sure you missed

12    us, right?

13          THE COURT:  Absolutely.

14          MR. RAMIREZ:  Judge, this case you're

15    familiar with it, because you dismissed it.  In

16    argument we're going to rely pretty much on your

17    order dismissing the case with prejudice.  I think

18    you set off a lot of the factors that I think

19    warrant sanctions.

20          I'm going to jump to Page 3, in which you

21    said, "Moreover, the timing of the filing to avoid

22    proceedings in the New York action, in addition to

23    the debtor's failure to list the prior case on the

24    original bankruptcy petition in this case certainly

25    creates suspicion as to whether this petition was

1  filed in good faith."

2          I submit to you that it more than creates

3  suspicion, and I'm going to go over the case to

4  argue that it is a classic poster child case for

5  sanctions.

6          You then said that "Debtor is in the

7  business of acquiring judgments and collecting on

8  them."

9          Actually, they've only had this one

10  judgment from New York, the judgment by confession,

11  which the Court knows very well.

12          So let me first discuss the petition,

13  which has 18 questions.  They used one of these

14  forms.  All they had to do was check off the

15  different boxes.  There are 18 boxes, not very

16  complicated, and as you know, they checked off

17  Number 9 that said, "No prior bankruptcy."

18          I'm also going to argue that they lied

19  when they answered Number 10.  In Number 10 they

20  said that there was a business partner or affiliate

21  of the debtor, and then they say Hazan was such a

22  business partner or affiliate of the debtor.

23          Actually, Judge, you did the bankruptcy.

24  You know Selective was not -- Hazan was not a

25  partner or affiliate of Selective.  Throughout all

1  these years they've kept the two apart.  They had --
2  at the adversary proceeding they had different
3  lawyers, and they have always to the Court put a
4  front that they are not partners with each other and
5  they're not affiliated with each other.

6           They didn't list any asset -- Hazan didn't
7  list any ownership interest in Selective, and now
8  the only reason they checked off that box and claim
9  to have Hazan as a business partner is so they could
10  have the case fall in front of you instead of be
11  assigned at random to other judges.

12          We then filed a motion to dismiss with
13  prejudice on April 12th.  They didn't do anything to
14  correct that until April 18th.  They waited six days
15  to correct this very blatant error.  They didn't
16  correct any of the others.

17          There were a lot of other things that they
18  did change, though.  All of a sudden in the space of
19  a couple of weeks the assets jumped from zero to
20  50,000, now they jumped to 100,000 to 500,000.  The
21  estimated liabilities, which were zero to 50,000,
22  now jumped from 50,000 to 100,000.

23          So although there are only 18 questions,
24  there were a lot of mistakes in that initial filing.
25  When we get to the declaration, when they filed the

1   schedules they disclosed the fact that the

2   corporation basically is nothing but a shell.  They

3   have no cash, no deposits, no accounts receivable,

4   no investments, no inventory.  They have no

5   furniture, no machinery, no real property, no

6   intangible or intellectual property.

7            The only thing they claim to have as an

8   asset is $123,470.71 that they claim you awarded to

9   them in the final judgment on the adversary.  But if

10  you read the final judgment on the adversary, you

11  did nothing of the sort.  You said -- after you

12  mentioned the amount you said, "Whether the various

13  satisfactions and other documents filed by Selective

14  waive Selective's right to collect any further

15  balance is an issue between Selective and NLG."  You

16  didn't award that money.  You just said it was an

17  issue for Selective and NLG.

18           And that's precisely what NLG was trying

19  to do in New York in front of Judge Shlomo Hagler.

20  They had scheduled a hearing, and they were able to

21  delay that hearing by several months by filing this

22  bankruptcy petition.  What's most galling is that

23  they had done that before, and for the same premise,

24  for delaying a resolution of that judgment by

25  confession in New York.

1          And the Court has said, "How can you

2     revisit this after so many years have passed?"

3          Well, we've tried to have the Judge rule

4     on our motion to vacate since 2014.  He has neither

5     granted nor denied it.  If he had denied it we could

6     have taken an appeal, but he just keeping adjourning

7     and putting it off and allowing Selective to use all

8     kinds of chicanery to put the thing off.

9          Besides the two bankruptcy petitions, they

10    also filed a notice of removal, which was two and a

11    half years too late.  So they have been trying to

12    delay a decision on the merits in that proceeding,

13    and now they're claiming, "Oh, my God, you can't

14    undo it, because so much time has gone by."

15          It's their fault that so much time has

16    gone by.  We are entitled to a ruling from Judge

17    Hagler, and hopefully he will do that in the next

18    couple of years.

19          THE COURT:  Well, you don't want to rush

20    him.

21          MR. RAMIREZ:  Huh?

22          THE COURT:  You don't want to rush him.

23          MR. RAMIREZ:  No, I don't want to rush

24    him, Judge.  He took -- we had a hearing on

25    June 20th, and he took the case under advisement.

1           One of the curious things in that hearing

2      is that they argued vehemently that that judgment

3      has been satisfied.  You cannot vacate a judgment

4      that doesn't exist anymore, that's been satisfied.

5      It was satisfied in 2015.  And yet on the petition

6      they're listing 123,000 as something that they're

7      still owed on that satisfied judgment.

8           The Judge asked them point blank, "What is

9      it, satisfied or it's not satisfied?"  Because it

10     shifts from one hearing to another.

11           "No, Judge.  It's satisfied.  We're not

12     trying to collect any money on that judgment."

13           Well, tomorrow we have a hearing in front

14     of another Judge in which they are indeed trying to

15     collect on that judgment.

16           I'm going to use the same case law that

17     was cited by Selective in their response to our

18     motion, and that is In re:  Phoenix Piccadilly.  The

19     Court listed all kinds of factors that the Court can

20     consider.  Every single factor in this case argues

21     in favor of sanctions.

22           Debtor has only one asset.  Here it's

23     questionable whether they even have one asset,

24     because I submit to you that asset was satisfied.

25           They have few unsecured creditors whose

1   claims are small in relation to the claims of the

2   secured creditors.  Well, if you vacate that

3   judgment in New York, we go back to being a secured

4   creditor, and our claim is going to be 6 million as

5   opposed to several thousand for these attorneys.

6   And they're only attorneys.  They're not really

7   secured creditors of any debts that Selective has

8   incurred.

9            They have few employees.  They have no

10  employees actually.  That's one of the factors.

11           Number 4, the property is subject to a

12  foreclosure.  Well, you know it is.  Hazan's

13  property on Fisher Island is subject to foreclosure

14  and that's being litigated.  We have still an appeal

15  pending.  We're supposed to have a hearing tomorrow

16  with Judge Moreno, but with the appointment of two

17  new judges, now that case has been reassigned to

18  Judge Rodney Smith.  So I don't know if that's going

19  to delay the appeal.  I suspect it will.

20           The fifth criteria is the debtor's

21  financial problems involve essentially a dispute

22  between the debtor and the secured creditors, which

23  can be resolved in the pending state court action.

24  In fact, we had a motion to vacate that we tried to

25  resolve that, and they were able to put it off by

1    filing this.

2              Six, the timing of the debtor's filing

3    evidences an intent to delay or frustrate.  We had

4    that happen here.  The filing of the first

5    bankruptcy was done the day before the hearing on

6    the motion to vacate.  The second filing was done

7    three business days before the bankruptcy -- the

8    bankruptcy was filed three business days or so

9    before the hearing on the motion to vacate.

10             So we have every single criteria, except

11   ours is double, because they did it twice.  We could

12   have asked for sanctions the first time they filed

13   for bankruptcy.  And we didn't, because we just

14   wanted to get the case resolved back in 2015.  We

15   didn't want to bog down with a sanction hearing and

16   all that.  So we went back to state court hoping to

17   get a ruling, and low and behold, we are four years

18   later and still don't have the ruling.

19             Another thing that the case mentions is

20   the venue.  Well, they picked the venue here because

21   they're here, but the only asset they have is in New

22   York, so they filed in New York before.  Why

23   couldn't they file in New York?  NLG is a Delaware

24   corporation, and they reside in Pennsylvania.  So

25   they picked the venue so that they could get the

1    case in front of you, but it was certainly not a

2    proper venue as far as the defendants.

3              They made it intentionally very difficult

4    to travel to Miami.  In fact, Mr. Kosachuk has had

5    to appear by phone, and we had problems before with

6    CourtCall, and this is not a convenient venue for

7    him.

8              So for all those reasons I urge the Court

9    to find what you came very close to doing the first

10   time, which is finding bad faith, find that this was

11   done in bad faith.  And then, unlike what they did,

12   we would request a hearing on the amount at a later

13   date.

14             Thank you.

15             THE COURT:  Response.

16             MR. LANGLEY:  Yes.  May it please the

17   Court.  David Langley for Selective.

18             Judge, we believe that this case was filed

19   in good faith.  We filed a response --

20             THE COURT:  Good faith has got nothing to

21   do with this.  This is a motion for sanctions, and

22   the sanctions are predicated on the fact that the

23   person who filed that petition didn't disclose a

24   prior bankruptcy in New York, which is a potential

25   perjury violation.  So the thing we really have to

1    decide is whether we should have this person

2    prosecuted for perjury and put in prison, or whether

3    there should be monetary sanctions.

4            Let's not talk about bad faith.  I don't

5    think there's any good faith on either side of this

6    case.  We're here on a specific discrete issue.

7            You're not disputing that the petition was

8    filed, and it omitted stating that there had been

9    the prior petition in New York; is that correct?

10           MR. LANGLEY:  That's correct, Judge.  If I

11   could explain.

12           THE COURT:  That's what we're here about.

13   It would appear to be a sanctionable matter.  As I

14   said, it appears most likely the question should be

15   whether it should be prison or money.

16           What do you have to say?

17           MR. LANGLEY:  Well, first, Judge, if I can

18   address Rule 11, as soon as it was brought to our

19   attention that that had been missed, as counsel

20   pointed out, as Judge Ramirez pointed out, within

21   six days we corrected that, well within the safe

22   harbor period.

23           THE COURT:  I disagree.

24           MR. LANGLEY:  I'm sorry, Judge?

25           THE COURT:  Safe harbor and Rule 11 are

1    entirely different than a sworn false statement

2    under penalty of perjury in a petition.  You don't

3    cure that under Rule 11.  But anyhow, go ahead.

4              MR. LANGLEY:  Yes, Judge.  If I could

5    explain the circumstances.

6              I understand how Your Honor might see

7    this.  If you look at the date that we filed this,

8    it was the date that we had a hearing before Your

9    Honor.  With a client living on Fisher Island that's

10   hard to get to, and I'm up in Broward, it's not easy

11   to get together and go over things.

12             The reason this was filed on this

13   particular day was because we had a hearing and I

14   went across the street with Mr. Meehan and sat down

15   on the benches in front of the federal building, and

16   we went over the pleadings on my phone, the

17   petition.

18             At that point we were just filing the

19   initial petition, not the schedules, which is why,

20   as the Judge points out, the numbers jumped up.  The

21   numbers weren't there to begin with.  That wasn't a

22   misfiling.

23             But in any event, Judge, we missed it, and

24   I'm sorry that we missed it.  My client certainly

25   knew there had been a prior bankruptcy.  We were

1   sitting there looking at the petition on the phone.

2   I didn't realize that we had missed the prior

3   filing.  We were trying to get the basic information

4   correct, and we filed it.

5           As soon as it was brought to my attention

6   we fixed that.  We disclosed it.  It's not like we

7   were trying to hide that.  We knew about it, they

8   knew about it.  It wasn't something we were trying

9   to conceal.  Certainly, when this was filed, it

10  wasn't filed for that particular purpose, to try to

11  avoid any disclosure of that issue.  It wasn't

12  intentional.

13          My client, I'm certain, didn't understand

14  the consequences of, you know, what all those little

15  things on the -- he's not an attorney.  He read

16  through the petition, as I did.  We missed the fact

17  that we hadn't disclosed something, and we've

18  corrected it.

19          I don't know if you'd like me to address

20  any of the other issues, the reasoning behind this.

21  Because I think there's a lot more outside of what

22  goes on in this courtroom that Your Honor is not

23  aware of, that prompted this.

24          THE COURT:  Well, I'm not interested in

25  what's going on outside this courtroom.  I'm

Page 15

1    interested in what's going on in this courtroom, and

2    in that petition was a perjurous statement made, and

3    as I said, it appears very clear that it's not cured

4    by Rule 11, and that sanctions are appropriate.  As

5    I said, I think the question is, should the

6    sanctions be criminal prosecution or should they be

7    a monetary sanction.

8              Do you have any thoughts on that issue?

9              MR. LANGLEY:  Yes, Judge.  Certainly for

10   criminal, there was no criminal intent here.  Not on

11   my part, certainly, and not on the part of

12   Mr. Meehan.  As I said, there were -- you know, it's

13   not like we're trying to disclose something -- fail

14   to disclose something.  We knew everybody knew about

15   it.  There was no purpose, no point, no intent to

16   try to conceal anything.  It was a mistake.  It was

17   an honest mistake.  We didn't get it listed.

18             We had a lot going on.  We had 15 matters

19   before Your Honor on the other cases.  We had a lot

20   of things going on.  My client was drowning with all

21   the pleadings that are being filed in six different

22   pending actions by NLG, in which, in our opinion,

23   they're trying to win the case, not on the merits,

24   but financially by running Selective out of money.

25             And that's why we filed this, and we filed

1   it to try to, you know, bring some resolution to

2   those matters, to try to resolve all these issues,

3   which are the same issues you heard at trial two

4   years ago, just over and over and over again, in six

5   other proceedings, three different District Courts

6   here, two state courts here, including the Gordo

7   case, where we're going in tomorrow, and the Hagler

8   case up in New York.

9           It was our opinion that once NLG realized

10  they had lost the trial, that the appeal had been

11  dismissed twice, just waiting on it to get dismissed

12  again, that their decision was to try to win, not

13  legally, not on the merits, but financially, by just

14  filing so many pleadings in so many different cases,

15  with Mr. Kosachuk filing using other people's

16  credentials, just to run my client out of money.  We

17  were trying to put a stop to that.

18          We filed in a hurry and were reviewing the

19  case on the phone.  There was certainly no intent on

20  his part or my part to try to mislead the Court or

21  deceive the Court.  There was certainly no criminal

22  intent, Judge.

23          THE COURT:  Anything further?

24          MR. LANGLEY:  Again, if you want me to --

25          THE COURT:  I don't want you to do

1   anything.  You need to do whatever you think is

2   appropriate to represent your client properly.

3                   MR. LANGLEY:  Okay, Judge.  I would like

4   to address, again -- I understand you, when we had

5   the motion to dismiss, you saw this as Selective

6   filing this bankruptcy, the timing, filing for a

7   strategic purpose, and again, I would suggest the

8   timing was because that was the day I had a chance

9   to meet with Mr. Meehan, and the purpose was

10  financial, not strategic.  It's closely related, I

11  would grant that.

12                  But again, this case started out -- the

13  Hazan case and the adversary involving Selective

14  started out in a fairly normal fashion.  If you

15  recall, there were a couple of attorneys that

16  represented NLG, filed a motion for stay relief.

17  Geoffrey Aaronson handled that.  Fully briefed.  You

18  made a decision.  That moved on.

19                  Then the adversary was filed.  The

20  Genovese law firm represented NLG.  Things moved

21  along fairly normally.  The pleadings were

22  relatively good.  The matters were all briefed.  We

23  have hearings, everything proceeded fairly normally.

24                  Genovese didn't get paid.  They sued, got

25  a judgment.  Then came Jim miller.  He didn't get

1   paid.  He withdrew.  Then Nick Bangos came in.  He

2   didn't get paid.  He withdrew.

3              Then everything changed, Judge.  Judge

4   Ramirez came in to handle the hearings.  He's

5   appeared in New York court, not as an attorney, but

6   as an interested party, claiming he's owed hundreds

7   of thousands of dollars by NLG.  I think it's fair

8   to assume -- and not to disparage Judge Ramirez in

9   any way, but I think it's fair to assume that he's

10  not getting paid by the hour to come to these

11  hearings.

12             And we know that Astrid Gabbe is not

13  getting paid.  She basically admitted that to me

14  when I spoke to her the one time on the phone where

15  she's ever communicated with anybody.  She wasn't

16  aware of who I was, who I represented.  She didn't

17  know anything about the case.  She didn't know that

18  you had threatened $100,000 in sanctions against her

19  the day before.  She didn't know that a pleading had

20  been filed the night before under her name.  She

21  didn't know anything about anything.

22             She made it clear she rents out her

23  credentials to Kosachuk so he can file these

24  pleadings.  And so the purpose is, what they've been

25  doing since that period, since Gabbe got involved,

1  was file as many pleadings in as many different

2  courts as possible to just run up the fees for

3  Ms. Hazan and for Mr. Meehan.  That's what they've

4  been doing, and that's what we were trying to put a

5  stop to.

6          It does make sense for all of these cases

7  involving all of these same issues that were already

8  tried once to be in front of Your Honor.  That to us

9  made perfect sense.  But the issue behind that

10 wasn't so much the strategic sense as the financial,

11 to be able to get through the appeal and have the

12 case decided on the merits, not to have one party

13 outrun the other financially, wear the other one

14 down financially and win the case on financial

15 resources, not on the merits.

16          That's what was behind this, no bad

17 intent.  No bad intent as far as the timing, and no

18 intent to deceive Your Honor.  I've been appearing

19 before you for over 30 years.  I don't think I've

20 ever been accused of saying anything at all the

21 least bit misleading or dishonest, and I would tell

22 you very sincerely we were not trying to hide the

23 New York prior filing from the Court, and we brought

24 it about and we've been ready to discuss it.

25          Before we even filed this case, Judge, I

1  was in contact with the trustee up there to discuss

2  with him reopening that case to set aside the -- to

3  revise the order, because the order had the words

4  "with prejudice" in there, but the transcript showed

5  that there was a request for a finding in that case

6  of bad faith, and the Judge said, "No, there's no

7  finding of bad faith."  Section 349 says you have to

8  have bad faith to dismiss with prejudice.

9         So we were aware of that case and we're

10 dealing with it, and it was simply an oversight that

11 we did not list it until Mr. Ramirez brought it to

12 our attention, and we then moved quickly to amend.

13 I'm not sure what else I can tell you, Judge, other

14 than that we had no bad intentions when we filed

15 this.

16         And, Judge, just to point out, you've been

17 hearing all these things for two years.  There have

18 been many cases -- many issues where NLG has filed

19 things that you felt were inappropriate.  You've

20 told them to get rid of a lis pendens or there would

21 be sanctions, and they promptly went out and filed a

22 second one.  You threatened them with punitive

23 damages.  They went out and they filed a third one.

24 Prior to that they moved to enter a clerk's default

25 against a plaintiff, something that doesn't exist,

1   and you said that was improvident, and they turned

2   right around and did it again.

3              One of the last hearings we had we were

4   arguing a motion that had been priorly -- that had

5   been filed prior to that and had been denied.  It's

6   just pleading after pleading, action after action.

7   Writs of garnishment being served on the debtors by

8   NLG and by Mr. Kosachuk, issue after issue, where it

9   was clear that NLG and its parties, its attorneys,

10  could be subject to sanctions.  At one point you

11  even threatened $100,000 in sanctions.

12             And now for them to be seeking sanctions

13  against us, against me, against Selective, is just

14  inequitable, Judge.  I understand how you feel about

15  what we missed here, but to sanction us, when NLG

16  has done so many things that were improper --

17             THE COURT:  And they've been sanctioned

18  for it.

19             MR. LANGLEY:  Pardon me?

20             THE COURT:  And they've been sanctioned

21  for doing things.

22             MR. LANGLEY:  One time for $9,500.

23             THE COURT:  I believe it's a good number.

24             MR. LANGLEY:  Yes, I know, Judge, and that

25  was for hundreds of thousands of dollars spent by

Page 22

1  the parties on this side, and an award of $9,500

2  that hasn't been paid.

3          Again, Judge, just two years worth of

4  fighting with these folks and misrepresentation

5  after misrepresentation, and improper filings and

6  pleadings and actions one after the other.  To

7  sanction us at this date I think would just be

8  inequitable, Judge.

9          Thank you.

10          THE COURT:  Anything further?  Thank you.

11          Okay.  The Court has determined that

12  there's been an action subject to sanctions in the

13  failure to disclose under penalty of perjury the

14  prior case, and the Court will grant the motion for

15  sanctions and award appropriate sanctions.

16          The Court will prepare the order awarding

17  the sanctions. The Court will direct Mr. Ramirez to

18  file an affidavit of whatever legal expenses were

19  incurred in this matter.

20          Can you do that by the 2nd of July or do

21  you need more time?

22          MR. RAMIREZ:  No, Judge.  I can do it.  I

23  can do it.

24          THE COURT:  Very well then.  Send in such

25  an affidavit, and the Court will review it and make

1    a determination.  The Court will give the opposing

2    side the benefit of the doubt as far as whether or

3    not there should be criminal proceedings, and we'll

4    stay with monetary sanctions as the way to go in

5    this matter.

6            I thank you both for coming today and

7    helping me to work up this case.  Good luck and

8    we'll see you again soon, I'm sure.

9            MR. RAMIREZ:  Thank you, Judge.

10            (Thereupon, the hearing was concluded.)

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Page 24

```
 1                    CERTIFICATION
 2
 3   STATE OF FLORIDA:
 4   COUNTY  OF  DADE:
 5
 6             I, HELAYNE F. WILLS, Shorthand
 7   Reporter and Notary Public in and for the State of
 8   Florida at Large, do hereby certify that the
 9   foregoing proceedings were taken by electronic
10   recording at the date and place as stated in the
11   caption hereto on Page 1; that the foregoing
12   computer-aided transcription is a true record of my
13   stenographic notes taken from said electronic
14   recording.
15             WITNESS my hand this 28th day of
16   June, 2019.
17
18
19             _____
                    HELAYNE F. WILLS
20             Court Reporter and Notary Public
               In and For the State of Florida at Large
21             Commission No:  GG123092  Expires 8/2/2021
22
23
24
25
```