Page 1

UNITED STATES BANKRUPTCY COURT

SOUTHERN DISTRICT OF FLORIDA

IN RE:                              CASE NO. 19-14602-AJC

SELECTIVE ADVISOR GROUP, LLC,

        Debtor.
_____/

ECF #88

August 8, 2019

The above-entitled cause came on for hearing before the Honorable A. JAY CRISTOL, one of the Judges in the UNITED STATES BANKRUPTCY COURT, in and for the SOUTHERN DISTRICT OF FLORIDA, at 301 North Miami Ave., Miami, Miami-Dade County, Florida on August 8, 2019, commencing at or about 11:00 a.m., and the following proceedings were had.

Transcribed from a digital recording by:
Cheryl L. Jenkins, RPR, RMR

APPEARANCES:

DAVID LANGLEY, Esquire
On behalf of the Debtor

JUAN RAMIREZ, Esquire
On behalf of NLG

ALSO PRESENT

Chris Kosachuk (via telephone)
ECRO - Electronic Court Reporting Operator

- - - - - - -

1           THE COURT:  Okay.  Now let's move on to the
2    next matter on the calendar, that's Selective Advisor
3    Group, and that's an emergency motion for stay, and there
4    is already a stay allowed upon the posting of a bond.
5               Who is here on the Selective Advisor Group
6    matter?
7           MR. LANGLEY:  Good morning again,
8    your Honor.  David Langley appearing on behalf of
9    Selective Advisor Group.
10          THE COURT:  And we're on Court Paper 88.
11          MR. RAMIREZ:  And Juan Ramirez, Junior, on
12   behalf of NLG, R-a-m-i-r-e-z.
13          THE COURT:  Very well.  Proceed,
14   Mr. Langley.
15          MR. LANGLEY:  I know we've had several
16   motions partially denied.  Judge, we were hoping to get
17   discovery and a hearing on the award of sanctions on this
18   matter as well, the same reasoning as in the 9,500 awarded
19   in the Elizabeth Hazan case, that we would like to take
20   some discovery.
21              And one thing I've raised a number of times,
22   I know maybe you get tired of hearing it, Judge, but to me
23   it's kind of the central issue here, when the Genovese
24   Joblove firm was involved, we were litigating on the
25   merits.  When Jim Miller/Nick Bangos were involved, we

1  were dealing with the merits.  We had a trial on the
2  merits.
3              But since then nothing has been focusing on
4  the merits.  It's been a war or attrition.  Mr. Kosachuk
5  has worked out this deal with Astrid Gabbe, that she
6  basically admitted to me on the phone, that she let's him
7  use her filing credentials, and he files without having to
8  pay any attorney's fees.
9              And I can't speak for Mr. Ramirez, but my
10 assumption is that he's not getting a check every month
11 for the 650 an hour that he's charging.  He's on a
12 contingent fee.
13             So we're at the point where NLG just files
14 as many pleadings in as many jurisdictions as possible to
15 try to wear down Elizabeth Hazan and John Meehan, and run
16 them out of money, and fight a war of attrition.
17             When we were at trial, one of the things you
18 mentioned was that you were trying to put an end to 10
19 years worth of litigation, and hoped it won't go on for
20 another 10 years.
21             I think if we look back and count the number
22 of pleadings that have been filed in all the various
23 courts since then, they're starting to approach the number
24 that were filed before the trial, and that's the very
25 reason why we filed that Selective bankruptcy.

1    I know you don't agree with that, and I'm
2 not objecting -- I'm not arguing with the Court over the
3 dismissal of the case, but we did file it based on a case
4 out of Georgia that we found, that seemed to be on all
5 fours, that said when you're trying to preserve assets,
6 which is what we were trying to do, because Ms. Hazan and
7 Mr. Meehan are paying fees every month, NLG is not, and
8 it's an unfair thing, and they're just trying to wear us
9 down, and that's what we were trying to put a stop to, and
10 now we end up with sanctions against me and against
11 Selective, supposedly to reimburse NLG for fees they're
12 not actually paying out, it's going to be a windfall to
13 them, and it's because I signed a petition --
14    THE COURT: Well, what matter are you
15 arguing? You've lost me.
16    MR. LANGLEY: The 9,500 award.
17    THE COURT: The motion before the Court
18 today was to modify the bond requirements, and so the
19 Court has already set a bond requirement of $9,500, and in
20 the motion it was suggested that rather than post a cash
21 bond, that the -- what do you call it, the moving party
22 had other assets that it was willing to put up in lieu of
23 the cash bond, and if Mr. Ramirez agrees with that, that
24 solves the matter, and if he doesn't, then you can finish
25 your argument.

1                    Do you want some other form of bond,
2    Mr. Ramirez?
3                    MR. LANGLEY:  We would also --
4                    MR. RAMIREZ:  We don't agree.  I think they
5    should put a cash bond, like we had to do with our
6    judgment.
7                    THE COURT:  Okay.  That settles that.
8                    Continue with your argument, Mr. Langley.
9                    MR. LANGLEY:  Okay, Judge.
10                   Well, part of it I was just trying to,
11   again, discuss with the Court, from our side at least, the
12   apparent unfairness of this, where we bring to the Court's
13   attention that Astrid Gabbe is allowing her signature to
14   be placed on documents she's never even looked at, and yet
15   I'm getting sanctions because my signature appeared on a
16   document that had a mistake in it that we quickly
17   corrected, and we're being told to pay 9,500 to NLG to
18   reimburse them for fees they never really paid out.
19                   In light of all of that, we were hoping for
20   something other than paying a cash bond.  One is the fact
21   that in November we're going to be having a trial to
22   determine how much is due this side of the courtroom from
23   NLG.  We would, I guess, first suggest that that be a
24   setoff against any award in favor of NLG or, as we
25   mentioned in our motion, there is another judgment, and a

1   partial assignment can be placed into the provisions of
2   the Court as a $9,500 asset in lieu of a cash bond.
3             And, Judge, I mean, again, we see this as
4   just a windfall to NLG to reimburse them for fees they're
5   not incurring, and in light of all of the various
6   violations that they have done, and the numerous times
7   that they've violated the discharge injunction and other
8   orders of this Court, including now just recently this
9   fourth lis pendens, we would like some kind of a stay
10  until all those matters have been resolved, and to kind of
11  balance out the equities here.
12            THE COURT:  Anything further?
13            MR. LANGLEY:  That's all, Judge.
14            THE COURT:  Anything from you, Mr. Ramirez?
15            MR. RAMIREZ:  Just, Judge, I came prepared
16  to argue the motion to modify the bond.  I don't know if I
17  need to respond to everything else that has been said, but
18  I'm reminded of the Yiddish word chutzpah, because this --
19  the petition for bankruptcy that was filed was filed as a
20  second effort to delay a ruling from the Court in New
21  York, and the Court, when it issued the dismissal, pointed
22  that out, that it was the same tactic as before, and that
23  was just to delay, and now they get up here and they say
24  that we've been litigious in delaying matters.
25            We have a judgment from New York that is

1  fraudulent, it's void, no due process was given, and the
2  only two courts that can grant relief are the New York
3  court that entered the judgment, or by plenary action.
4  　　　　　　　They have been arguing in New York that it
5  cannot be done by motion, it has to be done by plenary
6  action.  So we have filed the plenary action here, NLG
7  filed the plenary action here in front of Judge Martinez,
8  and he has stayed the action pending the appeal of your
9  order of November 1st, 2017.  I think they're totally
10 unrelated, but in his wisdom he has stayed the action.
11 　　　　　　　We have another dec action that was filed by
12 Mr. Kosachuk in New York trying to get a resolution on the
13 merits of this fraudulent judgment.  So, for them to get
14 up here and to say that we've been litigious really takes
15 the cake.
16 　　　　　　　As far as their motion, Judge, I have seen
17 no support for using another corporation's judgment to put
18 down as a bond for Selective.  Selective is not the one
19 that owns that judgment, and they can't -- even if they
20 did, I don't know that they can just put one judgment
21 against the other.
22 　　　　　　　THE COURT:  They can if you agree, and if
23 you don't --
24 　　　　　　　MR. RAMIREZ:  I don't agree, Judge.
25 　　　　　　　THE COURT:  Okay, then that settles it.

1   MR. RAMIREZ: Okay.
2   THE COURT: Anything else, Mr. Langley?
3   MR. LANGLEY: Yes, Judge.
4   I'm a little surprised that Mr. Ramirez is,
5   again, talking about the Judge Hagler case up in New York.
6   THE COURT: I'm surprised that you're always
7   talking about something that has nothing to do with what's
8   going on here, but that's the way this case has been going
9   for how many years?
10   MR. LANGLEY: Yes, Judge, and NLG has
11   withdrawn all of their pending matters in front of
12   Judge Hagler. So, this Selective filing did not do them
13   any harm, nothing is going on there. Everything else they
14   have filed is untimely. They're trying to go back and
15   address a judgment that was entered seven years ago.
16   Obviously that's not going to happen, and to try to do
17   that down -- they've tried to do that down here without
18   success in front of Judge Martinez, and they filed a
19   federal action in New York in front of Judge Cooke up
20   there that's going no place, and everything in front of
21   Judge Hagler has either been withdrawn or denied.
22   So, there is no remaining challenge to that
23   New York judgment, and if you recall they stipulated in
24   this courtroom at trial that that was a final judgment.
25   So, they can't claim damage there.

```
 1                As far as what we're suggesting for a bond,
 2   Judge, we do have an assignment.  Selective owns a $9,500
 3   assignment of that judgement.
 4                THE COURT:  And that would be perfectly
 5   acceptable if agreed to by the opposing side.  It is not.
 6   So, therefore, your motion is denied.  Either put up the
 7   $9,500, if you want the stay, or the matter goes without a
 8   stay.
 9                MR. LANGLEY:  Okay, and just for
10   clarification --
11                THE COURT:  The Court will draw the order.
12                MR. LANGLEY:  For clarification, as I
13   understood your order, the stay is in effect, and we have
14   until September 23 to post the bond?
15                THE COURT:  Well, I don't have these papers
16   in front of me, so I don't remember if those dates are
17   correct.
18                MR. RAMIREZ:  I have the order here, Judge.
19                THE COURT:  Well, is that the way you
20   understand it, Mr. Ramirez?
21                MR. RAMIREZ:  I'll tell you in a second.
22                MR. LANGLEY:  August 23.
23                MR. KOSACHUK:  Your Honor, Chris Kosachuk
24   here.  The order that the Court entered --
25                MR. LANGLEY:  Judge, he's not --
```

1    MR. KOSACHUK:  -- is Docket Entry 87, and it
2    clearly says that the Clerk --
3            MR. LANGLEY:  Judge, he's not a lawyer.
4            MR. KOSACHUK:  Selective Advisors --
5            MR. LANGLEY:  He's not a party.
6            MR. KOSACHUK:  -- and counsel --
7            THE COURT:  Pardon me.
8            Mr. Kosachuk --
9            MR. RAMIREZ:  Yes.
10           THE COURT:  -- what are you doing here?
11   You're not on this case.
12           MR. RAMIREZ:  Judge, he's --
13           MR. KOSACHUK:  Well, to the extent that they
14   continue to drag me in, I can just point out to the Court
15   that the Court entered an order, it's Docket Number 87,
16   and it says the 9,500 must be posted with the Clerk of the
17   Bankruptcy Court by no later than August 13th, 2019.
18           MR. LANGLEY:  13th.
19           THE COURT:  And I'm holding that order in my
20   hand, and it says that --
21           MR. KOSACHUK:  On Page 2, Paragraph
22   Number 2.
23           THE COURT:  The last sentence on the page
24   says that, conditioned upon movant's posting with the
25   Clerk of the United States Bankruptcy Court the sum of

1  $9,500 due as sanctions under the final judgment by no
2  later than August 13, 2019.  So that's the date, not
3  September, but August 13.
4              So, good luck.  Anything else?
5              MR. RAMIREZ:  Not from me, Judge.
6              THE COURT:  Do you want this back?  Thank
7  you.
8              MR. RAMIREZ:  Thank you.
9              THE COURT:  Anything further from you,
10  Mr. Ramirez?
11              MR. RAMIREZ:  No Judge.
12              THE COURT:  Anything further from you,
13  Mr. Langley?
14              MR. LANGLEY:  An alternative approach,
15  Judge, would just be for the Court to accept the $9,500
16  judgment that Selective owns against NLG, and deem the
17  judgment satisfied.
18              THE COURT:  Well, that's --
19              MR. RAMIREZ:  That was reversed, there is no
20  judgment anymore.
21              MR. LANGLEY:  No, no, no.  We have a --
22              THE COURT:  We're not doing anything --
23              MR. LANGLEY:  We have a --
24              THE COURT:  -- other than denying your
25  motion to substitute the bond.  If you want to put up the

1   9,500, put it up.  If you don't, you don't get the stay.
2                MR. RAMIREZ:  Thank you, Judge.
3                MR. LANGLEY:  Understood.
4                THE COURT:  Okay.  Thank you both.
5                BAILIFF:  All rise.
6                THE COURT:  Thank you, Marshal.
7                BAILIFF:  You're welcome, Judge.
8                THE COURT:  Thank you, Susan, and we'll
9   adjourn.
10
11
12
13                (Thereupon, the hearing was concluded.)
14
15
16
17
18
19
20
21
22
23
24
25

1
2
3                           CERTIFICATION
4
5  STATE OF FLORIDA      :
6  COUNTY OF MIAMI-DADE   :
7
8            I, Cheryl L. Jenkins, RPR, RMR, Shorthand
9  Reporter and Notary Public in and for the State of Florida
10 at Large, do hereby certify that the foregoing proceedings
11 were transcribed by me from a digital recording held on
12 the date and from the place as stated in the caption
13 hereto on Page 1 to the best of my ability.
14            WITNESS my hand this 17th day of
15 September, 2019.
16
17
18            _____
19              CHERYL L. JENKINS, RPR, RMR
20            Court Reporter and Notary Public
              in and for the State of Florida at Large
21               Commission #GG 138863
                 December 27, 2021
22
23
24
25

OUELLETTE & MAULDIN  COURT REPORTERS, INC.
(305) 358-8875